UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ALBERTO TRAPAGA,                        )
     Petitioner,                       )
                                       )        CA #04-12599-NMG
v.                                      )
                                       )
BRUCE CHADBOURNE, Interim               )
Director, Bureau of Immigration and     )
Customs Enforcement, ROBERT             )
MURPHY, Superintendent of the Nemasket  )
Correctional Center, and KATHLEEN       )
DENEHY, Commissioner of the             )
Massachusetts Department of Corrections,)
     Respondents.                      )

## RESPONDENT, BRUCE CHADBOURNE'S MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS

### Introduction

Alberto Trapaga ("Trapaga"), presently committed by the Commonwealth of

Massachusetts to the Nemansket Correctional Center as a sexually dangerous person,[1] has filed

the instant Petition against federal immigration officials and state correctional officials for the

purpose of securing his release from *state* (not federal) custody.[2]

---

[1] Finding "the danger of recidivism posed by sex offenders . . . to be grave and that the protection of the public from these sex offenders is of paramount interest to the government," the Massachusetts Legislature in 1999 enacted a mechanism, codified at G.L. c. 123A, to provide for the civil commitment of individuals convicted of sexual offenses who are found to be sexually dangerous persons. St. 1999, c. 74, § 1. Under that scheme, a sexually dangerous person is defined as "any person who has been . . . convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility." G.L. c. 123A, § 1.

[2] To the extent that the Petition is construed as challenging the Petitioner's confinement to a state facility, *i.e.*, his commitment under G.L. c. 123A, the Petition is more appropriately construed as seeking relief under 28 U.S.C. §2254. The proper Respondent in such a claim would be the state officials, not federal immigration officials. The Respondent, Bruce

Liberally construing the Petition, it appears that Trapaga contends that upon the completion of his term of state imprisonment for a 1982 attempted rape conviction on March 9, 2003, the Department of Homeland Security[3] was statutorily mandated to take him into *federal* custody for the purpose of effecting his removal.  This act, presumably, would have deprived Massachusetts of the opportunity to indefinitely commit Trapaga as a sexual predator.  Petition, ¶1 ("The Petitioner has been illegally committed to the Treatment Center by a Superior Court Judge and he said that he had the right to overrule a Federal Court Immigration Judge."); and ¶8 ("This Petitioner has been ordered deported on 1986 and not taken into custody by the Marshal's Department on his Wrap-up Date March 9, 2003."); and ¶13 ("On 3/9/03, ICE was suppose to have taken Alberto Trapaga into custody to await his deportation. . . ").

The next step of Trapaga's argument grows out of the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001), in which the Supreme Court found that the authority to detain an alien for purposes of removal was authorized beyond a six month period only where the alien's removal was likely to occur in the reasonably foreseeable future.[4]  Trapaga, a Mariel

---

Chadbourne, takes no position as to the legality of the state order of commitment.

[3]The authority exercised by the Attorney General and the Immigration and Naturalization Service ("INS") now resides in the Secretary of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE") and Bureau of Citizenship and Immigration Services ("BCIS").  See Homeland Security Act of 2002, §§ 441(2), 442(a)(3), 451(b), 116 Stat. 2192, 6 U.S.C. §§ 251(2), 252(a)(3), 271(b) (2000 ed., Supp. II).

[4]Zadvydas' holding, *i.e.*, that the removal statute authorized detention beyond a six month period only where removal was likely to occur in the reasonably foreseeable future, was recently found to also apply to inadmissible aliens, like this Petitioner.  See Clark v. Suarez Martinez, — S.Ct. —, 2005 WL 50099 (January 12, 2005).

2

Cuban,[5] posits that since DHS cannot establish that his removal is likely (as no relations exist with Cuba) he must then be released from federal custody. See Petition, ¶¶17-20.

The Petition is styled as a Petition for Writ of Habeas Corpus but seeks relief not available in habeas and is, therefore, construed for purposes of this Motion to Dismiss as seeking relief in mandamus (to compel the Director of Homeland Security to take action, *i.e.*, take the Petitioner in to federal custody) and/or tort, as it seeks $45,000,000.00 in monetary damages.

The relief requested, that the Department of Homeland Security *take custody* of the Petitioner is statutorily barred and unavailable in a habeas proceeding. Construed as a mandamus action, the claim fails as there is no "clear and indisputable" right to be taken into federal custody in these circumstances. And finally, there has been no waiver of sovereign immunity so as to allow the award of monetary damages.

Thus, because the Petitioner's claims lie outside the jurisdiction of this Court and the Petitioner's arguments fail to state a claim upon which relief may be granted, the Petition must be dismissed.

_____

[5]In 1980, approximately 120,000 Cubans left the Mariel harbor in Cuba and crossed to the United States by boat. See, e.g., Rosales-Garcia v. Holland, 322 F.3d 386, 390-91 (6th Cir.2003). The INS detained the aliens at the border and decided to exclude them from entry into the United States. After this initial detention, Petitioner was granted conditional parole into the United States and released by the INS under § 212(d)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5)(A), which authorizes the Attorney General in his discretion to parole into the United States any alien who is applying for admission to the United States.

This parole is not to be "regarded as an admission," 8 U.S.C. § 1182(d)(5)(A), and Petitioner is "legally considered to be detained at the border and hence as never having effected entry into this country." Sierra v. INS, 258 F.3d 1213, 1218 (10th Cir.2001)

**FACTS**[6]

Petitioner, a Mariel Cuban, arrived in the United States on May 27, 1980.   In 1982 Petitioner was convicted in the Commonwealth of Massachusetts of assault and battery by means of a dangerous weapon and assault with the intent to commit rape.  Petition, ¶12.  He was sentenced to twenty years of incarceration at MCI-Concord.  Id.  He was paroled from state custody in 1986. Id.

Upon his parole from state custody, he was ordered deported,[7] detained by INS, and held by INS in various federal facilities for almost five years until 1991.  Petition, ¶ 8 and 12.  Trapaga violated his state parole by committing a robbery in 1992 and was recommitted by the Commonwealth of Massachusetts.  Petition, ¶12.  According to the Petition, Trapaga completed the rape sentence on March 3, 2003, and sought to be taken in to federal custody for purposes of effecting his removal.  Petition, ¶¶8, 12 and 13.

Prior to his release from criminal custody, however, the Commonwealth of Massachusetts moved to have the Petitioner committed as a sexually dangerous person.  Petition, ¶¶1-12.  After hearing, the Petitioner was indefinitely committed by the Massachusetts Superior Court to the Nemasket Correctional Center for treatment on December 5, 2003.  Petition, ¶12.

---

[6]For purposes dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and (6), all factual allegations of the complaint are taken as true and liberally construed.

[7]        Before the 1996 enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), aliens ineligible to enter the country were denominated "excludable" and ordered "deported."  8 U.S.C. §§ 1182(a), 1251(a)(1)(A) (1994 ed.).  Post-IIRIRA, such aliens are said to be "inadmissible" and held to be "removable."  8 U.S.C. §§ 1182(a), 1229a(e)(2) (2000 ed.).
Clark v. Suarez Martinez, — S.Ct. —, 2005 WL 50099, *3 n.2 (January 12, 2005).

Petitioner remains in the custody of the Commonwealth of Massachusetts pursuant to that order.   Petition, ¶¶12.

## ARGUMENT

**I.    Construed As A Petition For Habeas Relief, This Court Lacks Habeas Jurisdiction To Grant The Relief Requested**

A.    Congress Has Expressly Barred Habeas Jurisdiction To Review The Decision To Execute Removal Orders

The Petitioner's claim hinges upon an assertion that DHS may be compelled to take Petitioner into federal custody to effect his removal/deportation.  The law is clear, however, that it may not.  Contrary to this central tenet of the Petitioner's claim, Congress has expressly provided that this Court has no habeas jurisdiction to entertain such a claim.  Title 8, Section 1252(g) provides, in relevant part, that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."   See also, Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 482 (1999)("AADC") (finding that the provision bars habeas jurisdiction, the court stated "[t]he provision applies only to three discrete actions that the Attorney General may take: her "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders.").  The Petitioner seeks an order to compel the "execution" of his removal order, relief clearly barred by this provision.

As expressly legislated by Congress, this Court lacks jurisdiction to compel the action sought by the Petitioner.

B.    This Court Lacks Habeas Jurisdiction To Review An Exercise Of Discretion By The Department Of Homeland Security

Habeas review does not encompass review of discretionary acts.  See Saint Fort v. Ashcroft, 329 F.3d 191, 203 (1st Cir. 2003)( in habeas, an alien "may not challenge the agency's decision to exercise or not exercise its discretion").  It is unquestionably within the discretion of DHS to take no action to effect removal or exclusion.  See AADC, 525 U.S. at 484-85 (discretion with respect to executing removal orders includes "discretion to abandon the endeavor" whether "for humanitarian reasons or simply for . . . convenience").  To the extent that the Petitioner complains of the exercise of executive discretion to not effect his removal, his claim falls outside of this Court's habeas jurisdiction.

C.    The Petition Seeks Relief Outside The Scope Of Habeas Jurisdiction

Finally, with regard to Respondent Bruce Chadbourne, the claim is non-sensical.  The Petitioner is simply not seeking habeas relief, *i.e.*, an order directing that Chadbourne release him from *federal* custody "in violation of the laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Instead, he seeks an order directing Chadbourne to *take* custody of Petitioner.  Such relief is well outside the scope of (and arguably anathema to) habeas relief.

6

**III.    The Petitioner Fails To State A Claim For Mandamus Relief**

A.    The Standard For Mandamus Relief

As repeatedly recognized by the United States Supreme Court, "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." Allied Chemical Corporation v. Daiflon, Inc., 449 U.S. 33, 34 (1980) (per curiam); see also Mallard v. United States District Court, 490 U.S. 296, 309 (1989); Will v. Calvert Fire Ins. Co., 437 U.S. 655, 661-62 (1978); Chronicle Publishing Co. v. Hantzis, 902 F.2d 1028, 1031-32 (1st Cir. 1990); In re Recticel Foam Corp., 859 F.2d 1000, 1005-07 (1st Cir. 1988); Boreri v. Fiat S.P.A., 763 F.2d 17, 26 (1st Cir. 1985). In order to ensure that the mandamus power is used sparingly, the courts have imposed on petitioners the heavy burden of establishing the following prerequisites to such relief:  (1) that absent the requested relief, the petitioner is subject to "some special risk of irreparable harm," Recticel, 859 F.2d at 1005, that cannot be remedied or avoided by some other means, id.; see also Allied Chem. Corp., 449 U.S. at 35; and (2) that the petitioner's right to issuance of the writ is 'clear and indisputable.'" Allied Chem. Corp., 449 U.S. at 35.

B.    The Relief Requested Is Discretionary

To the extent that the Petition is construed as seeking an order to compel DHS to take custody of the Petitioner, that claim fails. It is axiomatic that "[w]here a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" Id. at 36. See also Chronicle Publishing Co., 902 F.2d at 1031 ("'mandaumus is generally thought an inappropriate prism through which to inspect exercises of judicial discretion'"); Recticel, 859 F.2d at 1006. As has been previously noted, it is unquestionably within the discretion of DHS to take no action to effect removal or exclusion. See AADC, 525 U.S. at

484-85 (discretion with respect to executing removal orders includes "discretion to abandon the endeavor" whether "for humanitarian reasons or simply for . . . convenience").

Thus, the Petitioner cannot make the requisite showing for entitlement to mandamus relief.

C.  <u>The Removal Statute Does Not Mandate That Petitioner Be Taken Into Federal Custody, And, Indeed, This Petitioner's Further Detention Is Simply Not Authorized By The Removal Statute</u>

The Petitioner appears to rely upon the removal statute, 8 U.S.C. §1231, for the proposition that federal law mandates that he be taken from state, into federal, custody.  Petition ¶17.  That statute provides that when an alien is ordered removed, the alien "shall" be removed within ninety days (the "removal period").  8 U.S.C. §1231(a)(1).  It further provides that criminal aliens, like this Petitioner, "shall" be detained during the removal period, <u>id.</u> §1231(a)(2), and provides grounds upon which aliens may be detained beyond the ninety day removal period.  <u>Id</u>. §1231(a)(6).  Fatal to the Petitioner's argument, however, is the fact that for an alien already "detained or confined," this "removal period" <u>does not commence</u> until "the date the alien is released from detention or confinement."  8 U.S.C. §1231(a)(1)(B)(iii).

The Petitioner is indisputably "detained or confined" to the Nemasket Treatment Facility. Thus, the removal period, as defined by the statute, has not begun.

To the extent petitioner may argue that "detained or confined" should mean incarcerated in prison due to a criminal conviction (rather than civil commitment as a sexual predator) such that the "removal period" began upon the expiration of his imprisonment, that reading runs counter to the plain language of the statute.   If Congress had intended such, it would have used the term "imprisonment."  Indeed, Congress used the term "imprisonment" in another paragraph

of section 1231 to describe incarceration imposed pursuant to a criminal conviction.  See 8

U.S.C. §1231(a)(4)(A).

At least one other statute, unnoted by the Petitioner, arguably supports the Petitioner's

claim. Title 8 U.S.C. §1226(c), provides in relevant part:

> (c) Detention of criminal aliens
>> (1) Custody
>> The Attorney General shall take into custody any alien who--
>>> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>>> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>>> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or
>>> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>> **when the alien is released**, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. §1226(c) (emphasis added).  Quite simply, this statute is of no assistance to the

Petitioner's claim as it mandates that Petitioner be taken into federal custody "when . . .

released."  Indisputably, Petitioner is in the custody of the Commonwealth of Massachusetts

(this is this very custody of which Petitioner complains).  He has not been "released."

Finally, there can be no argument that Petitioner was ever "released" upon the

completion of his imprisonment.  The state statutory scheme at issue provides that the Petition

must be filed prior to the completion of the criminal sentence and provides for mandatory

custody from the expiration of a sex offender's criminal sentence throughout the commitment

proceeding.   See Commonwealth v. Knapp, 441 Mass. 157, 159-160 (2004) (describing the

procedure for commitment and providing for mandatory detention, upon a finding of probable

cause, throughout the proceedings).

    D.    <u>An Order Directing DHS To Take Federal Custody Of The Petitioner For The Purpose Of Effecting His Removal Would be Unlawful</u>

More importantly, however, even if the statute were read to impose a non-discretionary duty to take federal custody of the Petitioner upon the completion of his criminal sentence for the purpose of effecting removal, such an order would be inappropriate in these circumstances. An order directing DHS to take custody of this Petitioner *to effect his removal* is not authorized by 8 U.S.C. §1231 as it has been interpreted by the Supreme Court. The circumstance of Benitez, a second Petitioner in the recent <u>Clark</u> case, provides illustration of this point.

During the pendency of the appeal, Benitez had been granted a one year parole from federal custody. Rejecting a mootness argument as to Benitez, the Court noted:

> Despite Benitez's release on a 1-year parole, this case continues to present a live case or controversy. If Benitez is correct, as his suit contends, that the Government lacks the authority to continue to detain him, he would have to be released, and *could not be taken back into custody unless* he violated the conditions of release (in which case detention would be authorized by 8 U.S.C. § 1253),[8] or *his detention became necessary to effectuate his removal* (in which case detention would once again be authorized by § 1231(a)(6).

<u>Clark</u>, — S.Ct. —, 2005 WL 50099, *3 n.3 (emphasis added). Thus, it would clearly be improper for DHS to take an alien back into custody under 8 U.S.C. §1231 where the six month

---

[8]That section provides:
An alien who shall willfully fail to comply with regulations or requirements issued pursuant to section 1231(a)(3) of this title or knowingly give false information in response to an inquiry under such section shall be fined not more than $1,000 or imprisoned for not more than one year, or both.
8 U.S.C. §1253(b).

"removal period" had been exceeded for *the sole purpose of effecting removal*[9] unless detention "became necessary to effectuate his removal." Id.

This Petitioner has been previously held in DHS (then INS) custody for almost five years between 1986 and 1991. See Petition, ¶¶8 and 12. Indisputably, the six month period of detention authorized by Zadvydas has already expired. Moreover, the government has no reasonable expectation at this time that the removal of the Petitioner can be effected. See Clark, — S.Ct. —, 2005 WL 50099, *9 (the government "concedes that it is no longer even involved in repatriation negotiations with Cuba"). Thus, detention has not "become necessary to effectuate his removal." Clark, — S.Ct. —, 2005 WL 50099, *3 n.3.

As there is no likelihood that the removal of the Petitioner can be accomplished in the reasonably foreseeable future, federal detention to "effect" removal is simply not authorized by 8 U.S.C. §1231 as it has been interpreted by the Supreme Court.

## IV.    Finally, The Petitioner Has Not Stated A Cognizable Claim, Within This Court's Jurisdiction, For Money Damages

The damages claim fails, because, for the reasons stated in Sections I-III, supra, this Petition states no ground for relief. To the extent the claim is liberally construed, presumably[10]

---

[9]The United States notes that the detention of the Petitioner would be authorized based upon the failure to comply with the terms of his parole. Such detention is discretionary, *i.e.*, not expressly mandated by the statute, however, and does not assist the Petitioner's argument. See supra, Section IIIB.

[10]Money damages are unrecoverable in either a habeas petition or mandamus action. See 28 U.S.C. §1361 (authorizing only suits "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff"); Preiser v. Rodriguez, 411 U.S. 475, 494 (1973) ("In the case of a damages claim, habeas corpus is not an appropriate or available federal remedy"); see also, e.g., Coggeshall Development Corp. v. Diamond, 884 F.2d 1, 4 (1st Cir. 1989) (rejecting mandamus action where relief sought would require expenditure of federal funds).

11

(although not cited) Petitioner seeks money damages under either the Federal Tort Claims Act ("FTCA") or <u>Bivens v. Six Unkown Federal Narcotics Agents</u>, 403 U.S. 388 (1971). This Court lacks jurisdiction to entertain either claim. The Petition states no actionable tort, *i.e.*, there is no actionable tort under Massachusetts law for failing to take an alien into federal custody. In any event, the Petitioner has not complied with the administrative requirements of the FTCA, a jurisdictional prerequisite. <u>See</u> 28 U.S.C. §2675.

Finally, in assessing whether a <u>Bivens</u> violation has occurred, "the first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, . . . whether the right was clearly established . . . ." <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001). As the plaintiff's Complaint fails to traverse either obstacle (*i.e.*, there is no constitutional right to be *taken into* federal custody and a non-existent right cannot be "clearly established") the Petition fails to state any viable claims under <u>Bivens</u>.[11]

---

[11]Respondents further note that no personal service, a jurisdictional prerequisite to a <u>Bivens</u> claim, has been effected.

## **CONCLUSION**

For the reasons stated herein, the Respondent Bruce Chadbourne requests that the

Petition be dismissed.

Respectfully submitted,

MICHAEL SULLIVAN
United States Attorney


 /s/ Mark J. Grady
Mark J. Grady, Assistant U.S. Attorney
John J. Moakley Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3136

### **Certificate of Service**

IT IS HEREBY CERTIFIED that on this _31st day of January 2005, service of the foregoing Memorandum has been made upon the Petitioner by first class mail.

 /s/ Mark J. Grady
Mark J. Grady
Assistant United States Attorney

13